UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

WALTER COVINGTON, DRUSCILLA          No. 2:07-cv-01811-MCE-GGH
COVINGTON, as parents and
Guardians ad Litem of Student
WAID COVINGTON,

     Plaintiffs,

    v.                                   **MEMORANDUM AND ORDER**

YUBA CITY UNIFIED SCHOOL
DISTRICT,

     Defendant.

----oo0oo----

    This case arises from a dispute regarding the provision of
educational services to Plaintiff Waid Covington ("Student"), a
child with special educational needs.  Student, along with his
parents and Guardians ad Litem, Plaintiffs Walter Covington and
Druscilla Covington ("Parents" or "Plaintiffs" unless otherwise
indicated) have sued the Yuba City Unified School District
("District") for alleged violations of the Individuals with
Disabilities Education Act, 20 U.S.C. § 1401, et seq. ("IDEA") in
connection with the District's provision of educational services.

1

1     Plaintiffs' dispute was originally adjudicated through a

2  four-day due process hearing conducted through the auspices of

3  the California Office of Administrative Hearings, Special

4  Education Division ("OAH").  Through the present action,

5  Plaintiffs take issue with most of the findings made by the

6  Administrative Law Judge ("ALJ") assigned to hear that

7  proceeding.

8     The District now moves for summary judgment on grounds that

9  the preponderance of the evidence supports the ALJ's findings,

10  with the exception of the ALJ's determination that the District

11  did not provide a Free And Appropriate Public Education ("FAPE")

12  to Student, as required by the IDEA, for the period between

13  August 2005 and January 2007.  Plaintiffs, for their part, have

14  filed a cross motion for summary judgment seeking to overturn the

15  ALJ's decision except with regard to the conclusion that no FAPE

16  was offered during the aforementioned 2005-2007 time period.  For

17  the reasons set forth below, the Court concludes that the ALJ's

18  findings are proper and should be affirmed.

19

20                     **BACKGROUND**

21

22     In October of 2000, when Student was eight years old and in

23  the second grade, the District determined he was eligible for

24  special educational services on grounds that he exhibited both

25  emotional disturbance and specific learning disability.

26  ///

27  ///

28  ///

Thereafter, in February of 2001, Student entered a program for emotional disturbed children operated by Sutter County in Live Oak, California, where he remained until he completed fifth grade at the conclusion of the 2003-04 academic year.  Student then attended the District's Andros Karperos Middle School ("AK") in Yuba City for sixth grade during 2004-05, and for the beginning of seventh grade in the Fall of 2005.  Student's parents removed him from AK on or about November 17, 2005, and the following day, they unilaterally enrolled Student at the Advent Youth Home ("Advent"), a sectarian, non-public residential school facility operated by the Seventh Day Adventist Church and located in Calhoun, Tennessee.

Prior to the upcoming 2005-06 school year, an Independent Educational Program ("IEP") team meeting was conducted for Student on June 9, 2005, during which the District outlined its proposed placement, support and services for Student as a seventh grader at AK.  The IEP determined that Student had unique needs in the areas of written expression, mathematics, and behavior. Special education support was to be provided for over 70 percent of Student's school day, with the remainder occurring in a "mainstream" general education environment.  Student was assigned a credentialed special education teacher, Jeff Kuhn, who had over five years' experience teaching or working with students having emotional disturbances.[1]  Mr. Kuhn was assisted by an aide, making the adult-to-student ration only 1:3-4.

///

---

[1] Mr. Kuhn taught Student's special day class during the entire time Student was enrolled at AK.

 1      The behavioral support component of Student's IEP[2] included
 2  a recommendation that school staff assist Student in identifying
 3  his frustrations as they occurred, and allowing him to take
 4  breaks in designated campus areas (like the library or
 5  counselor's office) where de-escalation could occur in a neutral
 6  setting.  The ALJ determined, at least at the time of the June
 7  2005 IEP, that Student's behavioral support plan had already been
 8  implemented for over three months with favorable results.

 9      According to Plaintiffs, shortly after starting seventh
10  grade, Student began experiencing increased anxiety.  He
11  performed little academic work, and experienced significant
12  behavioral problems which included a practice of leaving the
13  classroom, and even the AK campus, whenever he became stressed or
14  frustrated.  The District attributed this to the cyclical nature
15  of Student's bipolar condition, which it characterized as
16  entailing good days and bad days, with mood swings.

17      Between September 8 and November 17, 2005, Student ran away
18  from AK on at least five such occasions.  Increasingly concerned
19  by such behavior, Parents asked that an IEP meeting be convened
20  for November 3, 2005, after Student had left the school premises
21  three times.

22  ///

23  ///

24  ///

25

26      [2] This behavioral support component was allegedly based on
    25 days of data collected in January and February of 2005
27  concerning Student's noncompliant, disruptive, and aggressive
    behavior, data which revealed that Student was not exhibiting
28  significant aggressive behavior.

4

During the meeting, Parents requested that their son be placed at Advent (See Pls.' Mot., 17:15-16 (Parents "expressed their desire to place their son at Advent Home", and "provided literature and cost information..."; see also Pls.' Opp'n, 16:8-10 (noted desire, if not "specific intent" for Student's placement at Advent)). The District denied Parents' request and further denied an alternative request that Student be returned to the ED program in Live Oak. Aside from changing a writing class,[3] the District did not discuss any additional revisions to the IEP's goals, services, accommodations or behavioral support plan during the November 3, 2005 meeting. It believed a continuing trial-and-error process was indicated given Student's bipolar condition and his medication changes, which the District believed contributed to his adjustment difficulties more than any failure to implement appropriate behavioral supports.

Student proceeded to leave AK on two more occasions after the November 3, 2005 IEP hearing. On the second occasion, which occurred on November 17, 2005, Student became angry and frustrated and ultimately left campus. He was subsequently apprehended by the police and taken to a Sutter County mental health facility after purportedly telling the officers that they would have to shoot him in order to get him into a patrol car.

---

[3] Because Student had run away during his general education writing class on September 8, 2005, the IEP team removed him from that class following the November 3, 2005 IEP meeting and placed him in a special education day class for writing. Aside from the fact that at the first running away incident occurred on September 8, 2005 incident occurred as Student was having difficulty in his writing class, the ALJ concluded there was no evidence that any of the other incidents were triggered in that class.

That same day, after Student was discharged to his parents' care, Student's father called Doreen Osumi, the District's Director of Special Education, and left a message informing Ms. Osumi of his intent to remove Student from AK immediately.  Ms. Osumi called back that same evening and tried to dissuade Parents from immediately removing their son from the district, asking that any decision on placement be placed on hold until the parties could convene another IEP meeting and discuss other possible placements.   Nonetheless, the next day, November 18, 2005, Plaintiffs flew to Tennessee and Student was enrolled at Advent.

On November 17, 2005, the District sent a follow-up letter to Parents reiterating its belief that the Student's placement at AK was appropriate, but offering to hold an additional IEP to discuss Parents' concerns and to make any necessary changes. Although the District asked Parents to attend an IEP on three separate occasions between November 17, 2005 and May 17, 2006, their only response was to submit demands for reimbursement, dated January 8, 2006 and May 7, 2006, for the cost of Student attending Advent.

Ultimately, on August 31, 2006, more than nine months after they removed their son from the District, Parents did agree to attend an IEP meeting.  At that meeting, Parents again demanded reimbursement.  The District, for its part, offered Student the same placement and services that were previously offered and rejected at the November 2005 team meeting.

///

///

///

6

On October 4, 2006, Parents filed a request for due process alleging that Student's rights under the IDEA had been abridged. As the ALJ who conducted the eventual hearing noted, the only issue raised was a purported substantive denial of FAPE.  The ALJ framed that issue as follows:

> Did the District fail to offer Student a free and appropriate public education (FAPE) beginning in November of 2005 and continuing through the 2006-2007 school year by failing to meet his unique needs in the areas of core academics and behavior?

Decision, p. 2.  The ALJ went on to remark that no other substantive issues were implicated, and that no procedural denials of FAPE were alleged.  Id. at p. 3, n. 4.  The only remedy sought by Parents in the proceeding was reimbursement for costs they incurred in placing Student at Advent.

On January 19, 2007, before any hearing was held on Parents' due process claim, another IEP was convened.  That meeting resulted in an offer by the District to provide services directed both to Student's core academics and his behavior/mental health. Student was offered placement at Live Oak, the same school he had attended before going to AK, in a special day class for students with emotional disturbance.

The administrative hearing itself was held over four successive days between April 10 and April 13, 2007.  A decision was issued on June 4, 2007.  The ALJ did find that the District's November 3, 2005 IEP was lacking because the measures the District took to deal with Student's increasing behavioral problems early in the 2005-06 school year were neither timely nor sufficient.  Consequently, the ALJ determined that FAPE was not met between November 3, 2005 and January 19, 2007.

7

The ALJ nonetheless did not find reimbursement, the sole remedy requested by Plaintiffs at the hearing, to be appropriate. Moreover, as of January 19, 2007 IEP, the ALJ found that District did offer Student placement, services and supports that met FAPE requirements.

Following their receipt of the ALJ's decision, Plaintiffs instituted the present action in federal Court on September 4, 2007.

**STANDARD**

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(e)(2). That section requires that the decision be supported by the preponderance of the evidence, stating as follows:

> In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate."

Decision, p. 2.  This modified de novo standard requires that "due weight" be given to the administrative proceedings. Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  The amount of deference so accorded is subject to the court's discretion. Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987).  In making that determination, the thoroughness of the hearing officer's findings should be considered, with the degree of deference increased where said findings are "thorough and careful".

8

1  Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892

2  (9th Cir. 1995), citing Union Sch. Dist. v. Smith, 15 F.3d 1519,

3  1524 (9th Cir. 1994).  "Substantial weight" should be given to

4  the hearing officer's decision when it "evinces his careful,

5  impartial consideration of all the evidence and demonstrates his

6  sensitivity to the complexity of the issues presented." County

7  of San Diego v. Cal. Special Educ. Hearing Office, 93 F.3d 1458,

8  1466 (9th Cir. 1996), quoting Ojai Unified Sch. Dist. v. Jackson,

9  4 F.3d 1467, 1476 (9th Cir. 1993).  Such deference is appropriate

10  because "if the district court tried the case anew, the work of

11  the hearing officer would not receive 'due weight,' and would be

12  largely wasted." Capistrano, 59 F.3d at 891.

13       Because of the deference potentially accorded the

14  administrative proceedings, complete de novo review is

15  inappropriate. Amanda J. v. Clark County Sch. Dist., 267 F.3d

16  877, 887 (9th Cir. 2001).  Instead, the district court must make

17  an independent judgment based on a preponderance of the evidence

18  and giving due weight to the hearing officer's determination.

19  Capistrano, 59 F.3d at 892.  The preponderance of the evidence

20  standard "is by no means an invitation to the courts to

21  substitute their own notions of sound educational policy for

22  those of the school authorities which they review." Hendrick

23  Hudson, 458 U.S. at 206.  Rather, as indicated above, the Court

24  must give "due weight" to the administrative proceedings. Id.

25  ///

26  ///

27  ///

28  ///

1    After making the requisite independent assessment under the
2    constraints outlined above, the court is free to accept or reject
3    the hearing officer's findings in whole or in part.  <u>Ojai Unified</u>
4    <u>Sch. Dist.,</u> 4 F.3d at 1472-73.   Even if the review is styled as
5    a motion for summary judgment, the procedure is in substance an
6    appeal from an administrative determination based on a stipulated
7    record.   <u>Id.</u>

8
9                          **APPLICABLE LAW**
10
11   The IDEA requires that all states receiving federal funds
12   for education must provide disabled school children with a FAPE.
13   20 U.S.C. § 1412(a)(1)(A).  The FAPE, consisting of special
14   education and related services provided at no cost to the child's
15   parent or guardian, must meet state educational standards and be
16   tailored to the child's unique needs through development of an
17   IEP.  20 U.S.C. § 1401(9).  The IEP is a written statement for
18   each child that is developed and revised each year by a team
19   comprised of the child's parents, teachers and other specialists.
20   20 U.S.C. § 1401(14); § 1414(d)(1)(B).  The IEP must be
21   reasonably calculated to provide the student with some
22   educational benefit, although the IDEA does not require school
23   districts to provide special education students with the best
24   education available, or provide instruction services that
25   maximize a student's abilities.  <u>Hendrick Hudson</u>, 458 U.S. at
26   198-200.
27   ///
28   ///

Rather, school districts must only provide a "basic floor of opportunity" and made available, on an individualized basis, such specialized instructional and related services necessary to provide the requisite educational benefit.  Id. at 201.

Parents who believe that a public school system is not providing a FAPE may unilaterally remove their disabled child from the public school, place him or her in another educational institution, and seek tuition reimbursement for the cost of the alternate placement.  20 U.S.C. § 1412(a)(10)(C); Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 374 (1985).  Parents are entitled to reimbursement, however, only if the court concludes both that the public placement violated IDEA and the private school placement arranged by the parents was proper under the Act.  Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993).  Even then, the Court retains it discretion to reduce a reimbursement award if the equities so warrant.  Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484, 2496 (2009).  Costs incurred by parents in such alternative placements may also be reduced or denied if parents fail to provide timely and sufficient notice of the placement to the school district.  Notice of the parents' actual intent to place the student elsewhere must be provided either at the most recent IEP team meeting attended by the parents before removing their child from public school, or in writing at least ten business days in advance of the placement. 20 U.S.C. § 1412(a)(10)(C); 34 C.F.R. § 300.148(d). Reimbursement demands may also be reduced or denied upon a judicial finding of unreasonableness with respect to placement actions taken by parents.  34 C.F.R. § 300.148(d).

1   Indeed, in fashioning discretionary equitable relief under the

2   IDEA, the court must "consider all relevant factors." <u>Florence</u>

3   <u>County</u>, 510 U.S. at 16.  The conduct of both parties must be

4   reviewed and considered to determine whether relief is

5   appropriate.  <u>Parents of Student W. v. Puyallup Sch. Dist.,</u>

6   <u>No. 3,</u> 31 F.3d 1489, 1496 (9th Cir. 1994).

7

8                              **ANALYSIS**

9

10      Both sides have agreed that this case should be resolved

11  through summary judgment.  (<u>See</u> Parties' Joint Status Report, ECF

12  No. 24, 3:4-12).  While Plaintiffs' counsel initially indicated

13  that he would seek an additional evidence hearing pursuant to

14  20 U.S.C. § 1415(i)(2)(B)(ii) prior to submitting the matter by

15  way of motion for summary judgment, he failed to do so.  Indeed,

16  counsel stipulated that the case was ready for determination

17  through summary judgment and asked that the Court set the

18  contemplated cross motions pursuant to time frames they

19  themselves had suggested.  <u>See</u> Stipulation and Order, ECF No. 43.

20  4:3-5; Defs.' Opp'n to Pls.' Mot. for Summ. J., 2:6-7.)  Because

21  neither side timely sought to submit any additional evidence,[4]

22  this Court in essence reviews the decision of the ALJ, and the

23  administrative record, on an appellate basis.

24  ///

25  ─────────────

26      [4] On December 3, 2010, after the parties' cross motions for
    summary judgment had been fully briefed and submitted,
    Plaintiffs' counsel did submit a Motion to Introduce Additional

27  Evidence.  Given the parties prior representations and the
    scheduling of the summary judgment motions in accordance

28  therewith, Plaintiffs' motion was denied as untimely.

As indicated above, it must use its independent judgment to determine whether the Hearing Officer's decision is supported by a preponderance of the evidence as evinced by the record. Capistrano, 59 F.3d at 892.

Significantly, as also set forth above, it would be inappropriate for this Court to try the case anew, and due weight must be given to the hearing officer's decision commensurate with the level of careful consideration demonstrated by the decision itself.  Capistrano, 59 F.3d at 891-92.

In Capistrano, the Ninth Circuit reviewed the district court's adoption of the Hearing Officer's findings following an administrative IDEA hearing that involved ten days of testimony and the consideration of extensive exhibits.  Noting that the Hearing Officer issued a twenty-six page single-spaced decision that reviewed the evidence in detail (59 F.3d at 888), the Ninth Circuit described said decision as "especially careful and thorough", so that the district court, in reaching the same conclusions, "appropriately exercised [its] discretion to give it quite substantial deference".  Id. at 892.  Similarly, County of San Diego, another Ninth Circuit case, approved substantial weight being accorded by the district court where the hearing officer's analysis was "intensive and comprehensive".  County of San Diego v. Special Ed. Hearing Office, 93 F.3d at 1467.

The ALJ's decision in this matter, like the Capistrano and San Diego cases, was not only "careful and thorough" but also "intensive and comprehensive".  Its twenty-three singled-spaced pages provide a thorough application of the facts of this matter to the relevant legal contentions made by the parties.

13

The ALJ explained the basis of his opinions, the inferences he drew from the testimony and from the documentary record, and his rationale for affording greater weight to certain evidence and/or testimony.  On the basis of all those factors, the ALJ's decision is clearly entitled to substantial deference, as discussed in more detail below.

Turning first to the scope of Plaintiffs' due process request, the resulting hearing, and the ALJ's subsequent decision now under scrutiny, this Court rejects Plaintiffs' effort to expand the narrow substantive issues presented by this case to also include additional procedural grounds pursuant to which a FAPE was allegedly denied.  As the IDEA makes clear, "the party requesting the due process hearing <u>shall not be allowed</u> to raise issues at the due process hearing that were not raised in the [request for due process, unless the other party agrees otherwise."  20 U.S.C. § 1415(f)(3)(B); Cal. Ed. Code § 56502(i) (emphasis added).  The Ninth Circuit has also limited a special education appellant to the issues stated in their request for due process.  <u>County of San Diego v. Cal. Special Ed. Hearing Office,</u> 93 F.3d 1458, 1465-66 (9th Cir. 1996); <u>A.K. v. Alexandria City Sch. Bd.,</u> 484 F.3d 672, 679 n.7 (4th Cir. 2007) ("[F]or issues to be preserved for judicial review they must first be presented to the administrative hearing officer.").  This limitation avoids "reduc[ing] the proceedings before the state agency to a mere dress rehearsal."  <u>Springer v. Fairfax Co. Sch. Bd.,</u> 134 F.3d 659, 667 (4th Cir. 1998).

///

///

Here, as indicated above, it is clear that the sole issue before the ALJ rested with the substantive issues of whether Student was not provided a substantive FAPE in the areas of core academics and behavior, beginning in November 2005 and continuing through the 2006-07 school year.  No procedural issues were raised, and just as the ALJ declined to consider allegations of that nature during the due process hearing itself, so must this Court reject any attempt to resurrect them now.

In addition, the scope of the Court's review at this juncture is even more limited than the scope of the ALJ's underlying decision.  The sole issue advanced by Plaintiffs in this appeal is reimbursement for tuition and related expenses for the 2005-2006 school year, and through January 19, 2007.  See Pls.' Mot., 1:8-19.  Plaintiffs are accordingly not challenging the propriety of the January 19, 2007 IEP as adjudicated by the ALJ, or the ALJ's rejection of Plaintiffs' reimbursement requests for any period after January 19, 2007.  Those issues are not before this Court.

In assessing the propriety of the ALJ's decision on the issues that have been challenged, this Court must first look to whether Student was indeed denied a FAPE between November 2005 and January of 2007.  Then, the Court must turn its attention to whether the Advent placement selected by Plaintiffs was appropriate.  Finally, if both those questions are answered in the affirmative, the Court must look at whether reimbursement is proper and in what amount.

///

///

15

## A.   Denial Of FAPE

The ALJ felt that during the Fall of 2005, Student's behavior deteriorated significantly in that he failed to respond to strategies and interventions that had been successful in the past.  The ALJ pointed to conduct that he specifically characterized as "increasingly defiant and resistant to redirection or intervention."  Decision, ¶ 33.  He believed the District failed to respond either quickly or effectively, and determined that at the November 3, 2005 IEP, the District failed to seriously discuss how to best identify Student's run-away behavior.

The ALJ also felt that District staff "abruptly dismissed" Parents' request for alternative placement either by returning Student to Live Oak or by placing him at Advent.  Id. at ¶ 35. Significant, too, in the ALJ's estimation was District's failure to suggest any change in Student's IEP in response to his apparently escalating behavior other than one relatively minor change in his writing class.  The ALJ believed this failure to take additional steps was unreasonable and in violation of FAPE inasmuch as the District's inability to adequately address Student's unique behavioral needs resulted in him not receiving services calculated to provide the required educational benefit. Id. at ¶ 36.  The ALJ further pointed to the fact that the District continued to offer the same previously rejected placement and services in its follow-up IEP meeting on August 31, 2006, even after Parents had removed Student to Advent.  Id. at ¶ 41.

16

It was not until the January 19, 2007 IEP that the District
retreated from its entrenched position in that regard, and
offered both placement at Live Oak and additional mental health
services.  As already indicated above, the ALJ found that the
January 2007 IEP was adequate and provided Student with the
requisite FAPE.

The District's Motion for Summary Judgment asks that the
Court overturn the ALJ's finding that no FAPE was offered for the
period between November of 2005[5] and January 2007.  If the Court
were to accept the District's contention in that regard the issue
of reimbursement would become moot (in the lack of any deficit in
FAPE) and the issue of reimbursement/remedy would become
unnecessary to even address.

Although the District argues that it based its plan on a
behavioral analysis based on data obtained over a 25-day period,
and argues that Student's fluctuations in behavior were due more
to his bipolar condition than to any deficit in the program he
was offered, even the District concedes that its "efforts to
address Student's behavioral needs met with limited success."
District's Opp'n to Pls.' Mot., 15:16-17.

///

///

///

---

[5] Plaintiffs contend that the June 9, 2005 also violated
FAPE, and suggest that the ALJ's determination to the contrary
was in error, despite the fact that their demand for
reimbursement is limited to the period between Student's November
2005 placement at Advent and the time of the January 19, 2007
IEP.

The District's apparent intransigence in refusing to consider any change to its previous offer despite growing evidence of Student's apparent deterioration in the Fall of 2005 caused the ALJ to conclude that Student was denied an adequate FAPE.  That shortcoming was reiterated in August of 2006 when the District failed to budge from its already rejected proposal.  The ALJ's conclusion that Student was denied a FAPE between November 3, 2005 and January 19, 2007 is supported by a preponderance of the record based on the record as a whole, and the District's request for summary adjudication to the contrary is denied.  Because the Court accordingly concludes that an abrogation of the IDEA in that regard indeed occurred, it must next consider the parties' competing contentions concerning the propriety of Student's placement at Advent and Parents' entitlement to reimbursement for the costs they incurred in placing Student there on November 18, 2005.  The Court must now proceed to those issues.

**B.    Placement At Advent**

In a case where FAPE was disputed like this one, an alternative placement by parents is not required to meet state-mandated certification requirements.  <u>Florence County</u>, 510 U.S. at 14.  Despite that relaxed requirement, however, parentally obtained private school placement must nonetheless be deemed appropriate for the child in order to merit potential reimbursement.

///

///

18

Id. at 15 (parents entitled to reimbursement only upon a judicial finding both that the public placement violated the IDEA and a determination that the private placement at issue was proper under the Act).

As the ALJ concluded, despite Student's special needs, Advent had no credentialed special education teachers on staff. See Decision, ¶ 70. Moreover, although certification is not a mandated prerequisite to reimbursement, it still merits noting, as the ALJ observed, that Advent's curriculum does not meet California's educational standards. Id. There was no evidence that an IEP was developed at Advent directed to Student's particular areas of deficit, and individualized instruction in his specific areas of need, math and reading, were not provided. With respect to Student's behavioral issues, the ALJ also concluded that Advent was not trained to provide needed interventions. Id. at 72. Advent lacked individualized behavioral supports, and the evidence showed that Student continued to exhibit behaviors similar to those encountered at AK after his move to Tennessee.[6] In addition, Advent's religious based curriculum, which apparently included significant Bible study and application, had nothing to do with his special needs. This Court finds the ALJ's finding that Advent was not an appropriate placement for Student to be supported by a preponderance of the evidence.

---

[6] Although Student had not run away from Advent as of the time of the administrative hearing, he did run away from home in December of 2006 while on break. In addition, according to the ALJ, his other behaviors, including distractability, short attention span, conflict issues, and poor study habits, continued. Id. at 71.

## C.  Propriety Of Reimbursement

Even if the Court were to find that Advent was an appropriate placement for Student, which it has not, ordering reimbursement for monies expended by Parents is still a matter within the Court's discretion.  Forest Grove, 129 S. Ct. at 2496. As set forth below, factors to be considered in exercising that reduction include whether timely and sufficient notice was provided to the District, and whether the parents' placement actions were reasonable.  Those factors will now be addressed.

### 1.  Notice

As already enumerated above, reimbursement may be reduced or denied if parents fail to provide adequate notice of their proposed private placement to the concerned public school.  Said notice must be provided either at the most recent IEP team meeting, or in writing at least ten business days before the intended placement.  20 U.S.C. § 1412 (a)(10)(C); 34 C.F.R. § 300.148(d)  The ALJ found that Parents here failed to provide timely notice before enrolling Student at Advent, and further found no basis upon which to excuse Parents' failure in that regard.  Decision, ¶ 65.  The Court agrees.  That failure alone is sufficient reason to deny Plaintiffs' reimbursement request.

///
///
///
///

1    Plaintiffs contend they did in fact provide notice at the
2  November 3, 2005 IEP meeting of their intent to enroll Student at
3  Advent.  They also claim that November 17, 2005, the day they
4  actually removed Student from the District, was some eleven days
5  following the notice they provided at the time of the IEP in any
6  event.  Either way, they argue that the time parameters
7  contemplated by the statute are satisfied.

8    Plaintiffs' contentions lack merit.  First, Plaintiffs' own
9  papers belie the argument that any unequivocal notice of the
10 intent to remove Student from the District was provided at the
11 time of the IEP.  As Plaintiffs' Opposition to the District's
12 Motion states, Parents "were exploring a possible residential
13 placement" as of November 3, 2005 and allegedly provided the
14 required notice "by noting their desire, if not their specific
15 intent" to move Student.  Pls.' Opp'n, 16:6-9.  "Exploring"
16 another alternative, and expressing a "desire" in that regard,
17 are not the same thing as telling the District at the time of the
18 IEP, or in writing thereafter, that a move would take place.  The
19 purpose of the notice requirement is to give a school district
20 time to present a different placement proposal in the face of a
21 definitive declaration from the parents of an intent to otherwise
22 move their child.  Here, on the other hand, at the time of the
23 IEP the Parents only provided brochures and cost information
24 pertaining to Advent, as well as a general request that he be
25 placed at Advent because of their increasing concern over the
26 services being provided by the District.  There was no
27 declaration from Parents of an actual intent on their part to
28 effectuate a unilateral placement at Advent.

21

Moreover, even when Parents did express that intent the day they removed Student from the District on November 17, 2005, they did so orally by telephone and not in writing as required by the statute.  Consequently, as reasoned by the ALJ, under any plausible scenario the requisite notice was simply not provided.  See Decision, ¶ 63.

Nor can notice be excused on grounds that Student would otherwise have faced likely physical or emotional harm.  Under 20 U.S.C. § 1412(a)(10)(C)(iv)(I), an exception to compliance with the notice requirement is recognized under such circumstances.  Student's father testified at the hearing concerning his son's apparent statement to the police, during his run-away episode of November 17, 2005, that he would have to be shot in order to be placed inside a patrol car.  According to Plaintiffs, this amounted to suicidal ideation and compounded their "grave concern" for their son's welfare.  See Pls.' Opp'n, 15:11-18.  After hearing all the testimony, however, the ALJ concluded that the evidence did not support this claim.  She found that there was no indication that Student attempted to harm himself during any of the run-away incidents (in fact the ALJ noted one incident where the Student called 911 and asked that the police return him to school).  She further concluded that no evidence supported a finding that serious harm would have befallen Student had the appropriate notice been given.  Decision, ¶ 64.

///

///

///

1   Having reviewed the matter, and after giving appropriate

2   deference to the ALJ's decision this Court determines that the

3   preponderance of the evidence supported that finding.  The notice

4   requirement was neither satisfied nor excused in the instant

5   matter.

6

7                **2.   Reasonableness of Parties' Actions**

8

9        In addition to notice, in assessing the propriety of

10  reimbursement the Court should also look to the conduct of the

11  parties.  Puyallup Sch. Dist., 31 F.3d at 1496.  In the present

12  case, after weighing all the evidence, the ALJ found that the

13  Parents' actions were not reasonable inasmuch as they failed to

14  adequately consider other more suitable placements and failed to

15  give District time to explore other placement options before

16  removing Student.  Decision, ¶ 75.  The ALJ did find the District

17  to be less than cooperative during the November IEP team meeting

18  concerning available placement options.  She further believed the

19  District was unreasonable in offering no significant changes when

20  Parents did finally agree to another IEP in August of 2006.

21  Nonetheless, in balancing the conduct of the parties, the ALJ

22  believed the scales tipped against Plaintiffs in evaluating

23  reasonableness.  Id. at 74-75.

24  ///

25  ///

26  ///

27  ///

28  ///

1    As the ALJ noted, because of their predisposition to select
2    Advent, Parents did little research before deciding to send
3    Student there.  Id. at 68.  The Father's apparent claim that
4    Advent was the only school in the entire United States that could
5    meet Student's particular needs (see Pls.' Mot., 16:22-17:1) is
6    less than plausible given testimony from Student's own therapists
7    that placements existed in California, not to mention states
8    closer than Tennessee, that were capable of meeting Student's
9    needs.  In addition, when asked at the hearing to identify
10   certified private schools in California that would have been
11   appropriate candidates for placement, the District's Director of
12   Special Education, Doreen Osumi, identified half a dozen
13   institutions and could have discussed more had time constraints
14   permitted.  See District's Opp'n to Pls.' Mot., 30:9-15.  This
15   caused the ALJ to conclude that schools with credentialed special
16   education teachers (unlike Advent) existed both in and out of
17   California that would have provided a more appropriate placement
18   for Student.  Decision, ¶¶ 70, 72.  As already discussed above,
19   staff at Advent, on the other hand, did not have the training to
20   offer the educational and behavioral interventions that were
21   indicated in Student's case.  Id. at 71.  Advent's curriculum did
22   not meet California's educational standards, and, in the
23   estimation of the ALJ, its math and writing interventions
24   programs were not designed to assist students like Student to
25   develop his skills.  Id. at 70.
26   ///
27   ///
28   ///

It appears Parents selected Advent not so much for the educational benefit it provided as for its affiliation with their Seventh Day Adventist Church.  They had learned of the school through their local church community, and had already placed Student's older brother there (it appears he was attending Advent at the time Student was removed).  In the ALJ's view, this caused Parents to be "clearly predisposed" to sending Student to Advent even though his educational and mental health needs were both greater and more complex than his brother's.  Id. at 68.  Even Parents conceded this was a factor in their selection of Advent.

In addition, while Student's therapists ostensibly recommended Advent, neither had visited Advent, not to mention the District's facilities, and their knowledge of the Advent facility was based primarily if not exclusively on information provided by Parents themselves.  Indeed, Student's psychiatrist, Dr. C. Herbert Schiro, admitted that he recommended Advent the same day Parents took Student to Tennessee because Parents asked him to do so and because his recommendation was a necessary part of Advent's enrollment process.  Dr. Schiro conceded he did not even consider other placements, whether local or otherwise, before making that recommendation.  Student's other provider, Pennisue Hignell Ph.D, similarly testified she did not consider placements other than Advent.

///
///
///
///
///

1  See District's Opp'n to Pls.' Mot., 30:14-22.[7]  This testimony

2  caused the ALJ to give "very limited weight" to the opinions of

3  both doctors on the propriety of Student's placement at Advent.

4       Once Parents did provide unequivocal notice (at least

5  orally) to the District (through a phone call on November 17,

6  2005) that they intended to remove Student and place him at

7  Advent, Doreen Osumi returned Parents' call the same evening, she

8  tried to dissuade them from the decision in order to conduct

9  another IEP meeting and revisit the issue of Student's placement.

10 Ms. Osumi followed up that discussion with a letter, also dated

11 November 17, 2005, denying Parent's contemplated placement and

12 requesting that an IEP meeting be scheduled to address Parents'

13 concerns and make any necessary changes to Student's IEP.

14 Decision, ¶ 39.  Despite several additional follow up letters,

15 the Parents did not agree to an additional IEP meeting until

16 August of 2006.

17      Although the August 2006 IEP still did not result in the

18 provision of a viable FAPE as discussed above, and while the

19 District did not provide a FAPE until January of 2007, the ALJ

20 concluded that the weight of the evidence nonetheless militated

21 against any reimbursement under a reasonableness analysis, since

22 Parents did not give District an adequate opportunity to explore

23 placement options before removing Student.

24 ///

25

26      [7] Despite providing a lengthy Reply in response to the
District's Opposition to their Motion, Plaintiffs do not
27 controvert these allegations, and state only that Drs. Schiro and
Hignell both felt that Student needed a more restrictive,
28 consistent environment than the District had offered.  See Pls.'
Reply, pp. 11-12.

In the ALJ's view, Parents were committed to an Advent placement and had no serious interest in considering other options. Parents' posture in this regard prevented a process in which the District could have offered additional supports and interventions at AK, revisited a Live Oak placement, or explored local or California residential placements.

Once again, this Court finds that the preponderance of the evidence supports the findings made by the ALJ on the reasonableness issue.  That factor, along with the propriety of the Advent placement in the first place and Plaintiffs' failure to provide District with proper notice concerning its unilateral placement, all support the ALJ's decision denying Plaintiffs' reimbursement request.

**CONCLUSION**

For all the reasons outlined above, the Court affirms the ALJ's decision in this matter as both careful, searching, and supported by the preponderance of the evidence.[8]  The District's Motion for Summary Judgment, or alternatively for summary adjudication (ECF No. 49) is accordingly GRANTED, except for its request that the ALJ's decision be reversed on grounds that the District did provide an acceptable FAPE to Student prior to January 19, 2007.

///

---

[8] Because oral argument was not deemed to be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local rule 230(g).

1  In that regard, the District's Motion is DENIED.  Plaintiffs'

2  Motion for Summary Judgment (ECF No. 50) is DENIED given the

3  Court's affirmation of the ALJ's findings.  The Clerk of Court is

4  directed to close this file.

5      IT IS SO ORDERED.

6

7  Dated: February 4, 2011

8  _____

9  MORRISON C. ENGLAND, JR.
   UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28